UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED MAR 0 1 2012
```

-------------------------------------X
                                      :
PREMIUM SPORTS INC.,                  :
                                      :
                    Plaintiff,        :        10 Civ. 3753 (KBF)
                                      :
         -v-                          :        MEMORANDUM & ORDER
                                      :
MATTHEW CONNELL, et al.,              :
                                      :
                    Defendants.       :
                                      :
-------------------------------------X

KATHERINE B. FORREST, District Judge:

On May 3, 2010, plaintiff Premium Sport, Inc. brought this action against defendants Matthew Connell, Patrick J. Reilly, Eugene Rooney, and Old Castle Corp. d/b/a Old Castle Restaurant and Pub (the "Old Castle"). The complaint asserts a single cause of action for violation of 47 U.S.C. § 605(a)--i.e., a portion of the Federal Communications Act ("FCA") that prohibits unauthorized publication or use of communications.

Plaintiff and defendants have cross-moved for summary judgment on plaintiff's claim alone.[1] This Court finds that plaintiff cannot make out the elements of a claim under § 605(a). Therefore, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

---

[1] Defendant Old Castle Corp. has asserted two breach of contract counterclaims against plaintiff (see Answer & Counterclaims (Dkt. No. 7) at ¶¶ 32-47), neither of which are addressed or resolved by this motion.

BACKGROUND

I.   RECITATION OF FACTS

The below recitation of facts is undisputed unless otherwise noted.

On February 13, 2010, defendants showed the Scotland/Wales soccer game on at least one television in the Old Castle. (Pl.'s Stmt. of Material Facts ("Pl. SOF") (Dkt. No. 45) ¶ 21.) Plaintiff was the exclusive licensee for that programming and did not transmit the game to defendants. (Pl. SOF ¶ 11; see id. ¶ 17.)[2]  Plaintiff did not authorize defendants' receiver/box at Old Castle to receive the broadcast, and defendants did not receive transmission of the game from a signal sent by plaintiff.  (Pl. SOF ¶¶ 17, 18.)

In order to show the game in their establishment, defendants engaged in what is euphemistically referred to as "self-help"--i.e., they obtained the programming via a friend of defendant Rooney, Michael Caulfield, who was living in Ireland. (Dep. of Eugene Rooney ("Rooney Dep.") 20:14-21:11, 42:7-44:8 (Decl. of Joel Christoph ("Christoph Decl.") (Dkt. No. 42) Ex. 5); see also Defs.' Local Civ. R. 56.1 Stmt. ("Defs' SOF") (Dkt. No. 49) ¶ 12.)  Caulfield received a broadcast of the game on

_____

[2] Defendants "deny knowledge and information sufficient to admit or deny that paragraph 11 asserts a material fact . . . ."  (Defs.' Local Civ. R. 56.1 Counter-Stmt. (Dkt. No. 50) ¶ 11.)  That is insufficient to create a dispute of material fact on a motion for summary judgment.  See Fed. R. Civ. P. 56(a).

his television in Dublin from the company "RTE" and, in turn, sent it on to defendants who then showed it at the Old Castle. (Rooney Dep. at 42:7-44:8; see also Defs. SOF ¶ 12.)   The programming was sent to defendants via Slingbox. (Pl. SOF ¶¶ 18-19.)

Although the parties dispute precisely how the Slingbox technology works, ultimate resolution of that dispute is immaterial to this motion.  Two important facts relating to the receipt and subsequent transmission of the programming from the individual in Dublin are uncontroverted:  (a) that the friend in Dublin received the original transmission on his home television set (whether it was by satellite or by cable is unclear but ultimately irrelevant since he was not sued); and (b) that subsequent to that initial receipt, the friend in turn transmitted the programming to defendants in the United States. (Defs. SOF ¶ 12; Pl. SOF ¶ 18; Rooney Dep. at 42:7-44:8.)  As discussed below, those facts alone are sufficient to grant summary judgment for defendants.

II.  EXPERT OPINIONS

In addition to these record facts, defendants have offered an affidavit from a proposed expert in satellite signal transmissions and Slingbox technology, Hector M. Martinez. (See Report of Hector M. Martinez ("Martinez Report") (Christoph Decl. Ex. 6).)  Plaintiffs deposed Mr. Martinez. (See

Deposition of Hector Martinez ("Martinez Dep.") (Reply Decl. of
Joel Christoph (Dkt. No. 56) Ex. 1).)   Mr. Martinez has
expertise in the area of satellite transmissions.   (See Martinez
Report at 1; see generally Martinez Dep.)   Plaintiffs did not
offer an expert report contradicting any of Mr. Martinez's
opinions.   Instead, they argue that he is unqualified and should
not be credited on this motion.   (See Pl.'s Resp. to Defs.' Mot.
for Summ. J. (Dkt. 47) at 4-5.)   This Court is entitled to, and
does, refer to expert reports submitted in connection with a
motion for summary judgment, particularly when plaintiffs had
ample notice and an opportunity to depose Mr. Martinez.   See
Raskin v. Wyatt Co., 125 F.3d 55, 65-66 (2d Cir. 1997).   Mr.
Martinez states that there would have been at least 1-2 minutes
of delay between the time that the game was received in the
apartment in Dublin and then transmitted to the Old Castle.
(Martinez Report at 3.)   (As discussed below, this is another
important fact supporting a lack of any genuine issue of fact as
to whether there was an "interception" for purposes of §605(a).)

Upon discovering that defendants had shown the game at the
Old Castle (Pl. SOF ¶ 21), plaintiffs filed this action.

## DISCUSSION

Summary judgment is appropriate when there is no triable
issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317,
327 (1986).   Rule 56 provides that when the "pleadings, the

4

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact," then the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that there is no genuine issue of fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  On a motion for summary judgment, this Court should not weigh the evidence or engage in credibility determinations.  B2X Corp. v. Classic Closeouts, LLC, No. 08 Civ. 4552, 2010 WL 2230198, at *1 (S.D.N.Y. May 26, 2010).  Instead, this Court must view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor.  Amnesty Am. V. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004).

Plaintiff has asserted a single claim: a violation of section 605(a) of the FCA.  That statute is inapplicable to defendants' conduct here.  There is no dispute that plaintiff was the exclusive licensee of the February 13 soccer game. There is also no dispute, however, that the transmission that was shown in the Old Castle originated from an apartment in Dublin, Ireland, was not an initial transmission (it first came from RTE), and that defendants did not "intercept" the transmission.  (Rooney Dep. 20:14-21:13; Pl. SOF ¶¶ 18-19.) Indeed, plaintiff's claim is that the crux of the violation is

that defendants "exhibited" the game.  (See Mem. of Law in

Support of Pl.'s Mot. for Summ. J. (Dkt. No. 37) at 6.)

    47 U.S.C. §605(a) provides, in pertinent part, that

> no person not being authorized by the sender shall
> intercept any radio communication . . .  No person
> having received any intercepted radio communication or
> having become acquainted with the contents, substance,
> purport, effect or meaning of such communication (or
> any part thereof) knowing that such communication was
> intercepted, shall divulge or publish the existence,
> contents, substance, purport, effect, or meaning of
> such communication . . . .

(emphasis added).

    In the context of programming, the statute is intended to

prevent the interception, and thereby piracy, of satellite

transmissions.  See J & J Sports Prods., Inc. v. Pimentel, Sabor

del Caribe, Inc., No. 09 Civ. 1501, 2009 U.S. Dist. LEXIS

119085, at *11 (M.D.Fla. Dec. 4, 2009).  That statute is

intended to prevent unlawful descrambling of the satellite

signal with an illegal converter box before the signal reaches

its intended destination.  Id. at *2.  Section 553 of the FCA

provides similar protections with regard to cable transmissions.

Id. at *11.

    The critical and dispositive legal point is that in order

for there to be a violation of 47 U.S.C. § 605(a), there must be

an "interception" of a signal or transmission.  See 47 U.S.C.

§ 605(a).  The statute clearly states that on its face.  The

case law leaves no doubt that the term "intercept" or

"interception" means to stop, seize, or interrupt prior to
arrival; or taking or seizing before arrival at the destined
place.  See, e.g., Katz v. United States, 389 U.S. 347, 88 S.Ct.
507, 19 L.Ed.2d 576 (1967); Goldman v. United States, 316 U.S.
129, 134, 62 S.Ct. 993, 86 L.Ed. 1322 (1942) ("The same view of
the scope of the Communications Act follows from the natural
meaning of the term 'intercept.'  As has rightly been held, this
word indicates the taking or seizure by the way or before
arrival at the destined place. It does not ordinarily connote
the obtaining of what was sent before, or at the moment, it
leaves the possession of the proposed sender, or after, or at
the moment, it comes into the possession of the proposed
receiver.");[3] Cablevision of Michigan, Inc. v. Sports Palace, No.
93-1737, 1994 U.S. App. LEXIS 13914, at *13 (6th Cir. June 6,
1994); That's Entmt. v. Anciano's, Inc., No. 94 C 7199, 1996 WL
514989, at *1 (N.D. Ill. 1996)("The Supreme Court's
interpretation views the concept of interception, as it must, in
the context of the destination.  In other words, you cannot
intercept something . . . after it arrives at its destination,
only while it is en route to its destination.").

     In Cablevision of Michigan, Inc., the use of a videotaped
transmission was held not to violate § 605(a) since it was not

---

[3] In Goldman, the Supreme Court held that listening in the next room to words
spoken into a telephone was not an interception of a wire communication.  316
U.S. at 134.

an unlawful "interception"--the taping had occurred at an
earlier point in time.  There, the court explained that § 605(a)
protects only cable programming as it is being transmitted via
satellite signal and that any rebroadcast of cable programming
is not an interception within the meaning of the statute.  1994
U.S. App. LEXIS 13914, at *11.  The fact that a boxing match was
shown in a bar by videotape (only 10 minutes after initial
broadcast) was insufficient to state a claim, even though
arguments were made that the programming had been "divulged" or
"published."  Id.; see also Smith v. Cincinnati v. Post & Times-
Star, 475 F.2d 740, 741 (6th Cir. 1973) (47 U.S.C § 605(a) is
violated only when a person "both intercepts and divulges a
communication").

        Here, there is no dispute that Caulfield, defendant
Rooney's friend, received the transmission from RTE in
Caulfield's apartment in Dublin and subsequently transmitted the
game to defendants.  (Defs. SOF ¶ 12; Rooney Dep. at
20:14-21:11, 42:7-44:8.)  If there was a satellite transmission
that could have been intercepted, it would have had to have been
before it arrived at Caulfield's apartment--i.e., the
interception would have occurred in Dublin.  Plaintiff did not
assert a claim against Caulfield--and it is not clear that it
could have.  Plaintiff has not argued or put forward any
evidence that the friend in fact "intercepted" a satellite

communication.  By the time the game reached the Old Castle, by whatever technology employed, there is no indication--and no argument has been made--that the transmission of the game was via the original satellite signal.  Plaintiff concedes it did not transit the signal to defendants.  (SOF ¶ 18.)  Rather, it argues that § 605(a) does not require an "interception."  (See Pl. Am. Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. (Dkt. No. 57) at 5.)  But as shown above, based on the face of the statute itself, that is incorrect as a matter of law.

It is possible that there would have been other potential routes to have addressed an allegedly unauthorized use of an exclusively licensed game.  For instance, if the requisite filings had been made at the Copyright Office, plaintiff might have had an infringement claim.  But plaintiff has not taken those routes--and the one it has chosen cannot provide it relief in this Court.

CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

The parties are directed to submit a joint letter to the Court by March 9, 2012, regarding (i) what is outstanding as to defendants' counterclaims, including any discovery, (ii) any

9

outstanding deadlines, and (iii) the status of any settlement discussions.

The Clerk of the Court is directed to terminate the motions at Docket Nos. 33 and 41.


    SO ORDERED:

Dated:    New York, New York
          March ⌊__, 2012

                                    _____
                                        KATHERINE B. FORREST
                                    United States District Judge

10